The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                                  Plaintiff,

            v.

LAWRENCE McCOLLUM,

                                  Defendant.

NO.  2:15-cr-00392-RAJ

ORDER ON DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

## I. BACKGROUND

This matter comes before the Court on Defendant Lawrence McCollum's motion for compassionate release.  Dkt. 58.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

In November 2015, a United States Homeland Security Investigations agent, working undercover, downloaded several images of young boys being raped by adult men from a computer later determined to be associated with Mr. McCollum.  At the time, Mr. McCollum was a registered sex offender who had earlier spent 210 months in prison for the crime of Rape of a Child in the First Degree.  Upon executing a search warrant at Mr. McCollum's home, federal agents seized numerous digital devices containing child pornography, which included videos of young boys being tied up, blindfolded, and anally raped by adult men.

On July 7, 2016, Mr. McCollum pleaded guilty to one count of receipt of child pornography and one count of possession of child pornography.  Dkt. 36.  On December 2, 2016, this Court sentenced Mr. McCollum to 180 months of imprisonment, the mandatory minimum prison term for his offenses, and a lifetime term of supervision. Dkt. 51.  He is currently housed at Federal Correctional Institution Lompoc and is scheduled to be released on September 11, 2028.

On September 21, 2020, Mr. McCollum filed the instant motion requesting compassionate release and a sentence reduction to time served, with a proposed special condition requiring him to reside at a halfway house and/or be confined to home detention for a period of time as determined by the Court.  Dkt. 58.

Mr. McCollum is currently 66 years of age.  He argues that his age and his deteriorating health conditions after having contracted coronavirus-19 (COVID-19) while incarcerated place him at greater risk of complications should he re-contract the virus. Further, he argues that FCI Lompoc is unable to protect vulnerable inmates like him from the virus.  Dkt. 58.

The government opposes the motion, responding that Mr. McCollum has not provided reasons that would support a finding by this Court that extraordinary and compelling circumstances exist to warrant his early release, and that Mr. McCollum has failed to establish he no longer poses a danger to others and the community.  Dkt. 64.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction."

United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

Mr. McCollum's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."  As relevant to Mr. McCollum's motion, the statute now provides:

>  (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

**B.      Exhaustion of Administrative Remedies.**

Prior to considering the merits of Mr. McCollum's compassionate release motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).  On June 1, 2020, Mr. McCollum, through his counsel, submitted a request for compassionate release to the warden at FCI Lompoc.  Dkt. 58, Ex. A.  As more than 30 days have elapsed since the submission of the request to the warden, Mr. McCollum's motion is properly before the Court.

**C.      Extraordinary and Compelling Circumstances.**

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. McCollum's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994. That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
>  (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence.  Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt.n.1.

In addition to the foregoing, case authority on this issue supports the proposition that when an inmate has health conditions that make them significantly more vulnerable to COVID-19, that likewise may constitute an extraordinary and compelling circumstance.  *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp. 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No. CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

While some courts have held, as argued by the Government, that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake

of the First Step Act, this Court agrees with the position taken by numerous courts that the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

In May of 2020, Mr. McCollum contracted COVID-19 while serving his term of incarceration at FCI Lompoc.  He argues that until there is a viable vaccine, he remains vulnerable to further health complications should he re-contract the virus, and that the Court should therefore grant him compassionate release given his age and deteriorating health.  Dkt. 58.

At 66 years of age, Mr. McCollum indicates he is in a risk category recognized by the Centers of Disease Control and Prevention (CDC) which makes him particularly susceptible to health complications from the virus.  He argues that his age, in and of itself, supports an "extraordinary and compelling" reason for compassionate release, particularly when combined with his other underlying health issues.  Dkt. 58.

Mr. McCollum argues that while he was fortunate to have already survived a bout of COVID-19, there is no definitive evidence to support a claim that he is now immune and will not become re-infected.  He contends that should he become infected again, given the effects on his body from his first infection, his body and immune system may not be strong enough to recover.  Mr. McCollum posits that, in considering his motion, the Court should accept as fact that he could become re-infected again with COVID-19. Dkt. 58.

In addition to his age, Mr. McCollum's motion also rests on his argument he is suffering from overall deteriorating health, including weight loss, hypertension, possible development of diabetes, hyperlipidemia, hypertensive heart disease without heart failure,

bronchitis, respiratory disorder; and an enlarged prostate.  Dkt. 60, Ex B.  He fears his deteriorating health from having already contracted COVID-19 may weaken him further to the point he is wheelchair-bound and permanently disabled.  Dkt. 58.

Finally, Mr. McCollum argues it is impossible for him and any inmate at FCI Lompoc to adhere to the recommendations of the CDC to help protect against the spread of COVID-19, specifically setting forth his inability to remain six feet apart from others, wash his hands frequently, disinfect common areas, and self-isolate.  Dkt. 58.

In response, the government argues Mr. McCollum has failed to establish that his fear of COVID-19 re-infection and his current medical conditions present extraordinary and compelling reasons for the early termination of his custodial sentence.  The government indicates that Mr. McCollum did test positive for COVID-19 on May 5, 2020, and that by May 20, 2020, after developing a cough, and suffering weight loss and other symptoms, he was transferred to the UPS Lompoc Hospital Care Unit for care, where he remained from May 20, 2020, until June 3, 2020.  Dkt. 66, Ex. 1 at 59-87, 91-100, 124-136.  The government argues, however, that the medical records indicate Mr. McCollum has fully recovered from the virus and that he has sought little by way of medical attention since his hospitalization, except for treatment for issues related to his enlarged prostate.  Dkt. 66, Ex. 1 at 1, 4, 124.  The government points to records indicating that Mr. McCollum has received follow-up care to ensure heart issues have not developed (Dkt. 66, Ex. 1 at 125-126), and that bloodwork done after an elevated glucose level in May of 2020 show glucose levels back within a normal range (Dkt. 66, Ex. 1 at 29, 39).

While conceding age is a factor the CDC considers relevant to an individual's risk of developing complications from COVID-19, the government argues this is but one factor the Court should consider in evaluating Mr. McCollum's motion.  Dkt. 64.

The government argues Mr. McCollum's claimed hypertension is not a medical condition that the CDC has identified as a risk factor for serious complications from COVID-19, but rather is identified as a *possible* risk factor.  Further, the government

points to Mr. McCollum's medical records from the Bureau of Prisons (BOP) indicating that his hypertension is being successfully controlled with medication.  Dkt. 66, Ex. 1.

The government counters Mr. McCollum's argument that he faces the risk of re-infection having already contracted the virus with current information from the CDC indicating the question remains open on whether re-infection is possible.  Dkt. 64.

In response to Mr. McCollum's contention that social distancing and other measures to prevent the spread of the virus are difficult or impossible at FCI Lompoc, the government points to the efforts made by the facility to test and identify those inmates who have contracted the virus and to then isolate them from the rest of the inmate population.  As evidence of this effort, the government sets forth that as of the time of filing its response to Mr. McCollum's motion for compassionate release, no inmates at FCI Lompoc currently had the virus and that 750 inmates were listed as "recovered." Dkt. 64.

Mr. McCollum has suffered the misfortune of having contracted COVID 19, but he has also experienced the good fortune of having recovered from it.  A significant portion of his motion for compassionate release is his fear of suffering re-infection with the virus.  While his fear is real, the certainty or risk factor of the virus returning is a complete unknown.  If the Court is expected to make a determination based upon the virus returning, it must rely upon Mr. McCollum's known medical condition and evidence-based indication of the likelihood of the reoccurrence of the virus or its symptoms.  Other than his age, he has not presented sufficient evidence of justification to warrant granting his request.  Even the CDC has not provided a definitive statement on the issue of whether an individual can recontract the virus or whether they have immunity after having recovered from it.

Considering the foregoing, this leaves the Court with Mr. McCollum's general concerns about the possibility of catching the virus again.  General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for reduction in sentencing as set forth in the Sentencing Commission's policy

statement on compassionate release, U.S.S.G. § 1B1.13.  *United States v. Eberhart,* No. 13-cr-00313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020.  Nor do such fears warrant a sentence reduction under the Court's independent assessment of the facts and circumstances presented.

Mr. McCollum also contends that because he suffers from hypertension, that condition should be considered in the Court's analysis.  His motion on this condition is denied for two reasons.  First, Mr. McCollum's medical condition as reflected in his BOP medical records strongly suggest he is on medications for this condition and it is well controlled as of the date of this order.  Second, the CDC has issued a tempered warning that hypertension "might" be a risk factor.  However, the CDC does not include high blood pressure in its list of factors that lead to an increased risk of severe illness from COVID-19.

The Court reaches the same conclusion with respect to the "other medical conditions" referenced by Mr. McCollum.  None of these individually or collectively warrant reducing his term of imprisonment for extraordinary and compelling reasons.

After analyzing Mr. McCollum's health related concerns, the issue of the conditions of his place of incarceration must be addressed.  In reviewing his request, the Court notes that it has traditionally considered the current conditions at the housing facility according to the BOP website.  If Mr. McCollum serves the balance of his custodial time at Lompoc, the current (November 24, 2020) conditions at that facility indicate:

|                    |     |
|--------------------|-----|
| Inmates Positive:  | 0   |
| Staff Positive:    | 0   |
| Inmate Deaths:     | 2   |
| Staff Deaths:      | 0   |
| Inmates Recovered: | 701 |
| Staff Recovered:   | 19  |

This Court is keenly aware of the limitations imposed in a prison setting and particularly those that previously existed at Lompoc.  As the government points out, many of the circumstances that previously existed during the outbreak are being addressed.  Of particular import is the government's report that the testing scheme utilized by BOP was able to identify the extensive number of cases within the facility and gain information to stop further spread of the virus.  This effort, according to the government, includes quarantining new inmates to the institution and testing to ensure there is no spread.  Dkt. 64, p. 9.  Considering the current evidence of conditions at Lompoc noted above, the evidence strongly suggests the conditions have changed and ameliorated the degree of Mr. McCollum's claim.  Mr. McCollum should be the beneficiary of the changed testing and follow-up at Lompoc.  Consequently, his argument about Lompoc fails to support his release as requested.

### D.  Safety of Others and 18 U.S.C. §3553 (a) Factors

The Court next turns to whether Mr. McCollum presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. 18 U.S.C. §3142(g).  The Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Mr. McCollum argues that his lifetime period of supervised release with its strict conditions are enough to protect the community and will mitigate the risk he would be a danger to any individual or to the community.  He points as well to his age and poor health as factors militating against recidivism.  Dkt. 58

Further, Mr. McCollum argues that the sentence he is serving during this global pandemic has resulted in far greater punishment than he would be experiencing under

normal circumstances, including prolonged lockdowns, loss of recreation and other programming, and access to his family.  Mr. McCollum argues these conditions of confinement were not foreseeable at the time the Court imposed its sentence and warrant a reconsideration of the § 3553(a) factors.  Dkt. 58.

The government argues Mr. McCollum remains a danger to others and to the community given that, despite spending nearly 20 years in prison for the crime of Rape of a Child in the First Degree, he went on to commit the instant offense for which he was sentenced to the mandatory 15-year minimum sentence deemed by Congress to be sufficient and necessary for crimes of this serious nature.  Dkt. 64.

The Court agrees with the government.  This Court is unable to find that Mr. McCollum is not a danger to the safety of any other person or to the community. 18 U.S.C. §3142 (g). While the Court finds it unnecessary to characterize Mr. McCollum as a "child rapist" as done by the government, Mr. McCollum's ongoing danger to the community is palpable.  He was convicted and sentenced to 36 months for Statutory Rape in the First Degree and released from prison September 25, 1989.  Barely three years after release, Mr. McCollum reoffended again and was charged on September 7, 1992 with Rape of a Child in the First Degree.  He was sentenced on September 7, 1992 to 210 months of imprisonment and released September 20, 2006.  Nine years later Mr. McCollum committed the instant offense for which he is currently serving time.  While the most recent offense did not include a hands-on offense and did reflect a gap in time, Mr. McCollum nevertheless returned to related conduct by downloading videos of children being raped.  Mr. McCollum's repeated conduct and attraction to sexually violent behavior involving children despite years of incarceration does little to diminish this Court's conclusion that he remains a danger to the community.  For these reasons alone, the Court denies his request for early release in order to safeguard the community and reflect the serious harm that child pornography trafficking imposes on society.  While some may view merely looking at child pornography as undeserving of harsh

punishment, Mr. McCollum's conduct helps create a lucrative market for those in the industry of creating child pornography and committing violence against young children.

### III.  CONCLUSION

For the foregoing reasons, Defendant Lawrence McCollum's motion for compassionate release is **DENIED**.

DATED this 24th day of November, 2020.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER - 12